COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS







IN RE: AMERICAN NATIONAL
INSURANCE COMPANY,


 Relator.

§


 


§


 


§


 


§


 


§


 


 § 





No. 08-07-00025-CV


AN ORIGINAL PROCEEDING IN 


MANDAMUS




O P I N I O N


 Relator, American National Insurance Company ("American National" or the "Company"),
asks this Court to issue a writ of mandamus ordering Respondent, the Honorable Linda Y. Chew,
Judge of the 327th Judicial District Court in El Paso County, to grant Relator's Motion To Compel
Arbitration. Finding no clear abuse of discretion, we will deny the mandamus relief requested.

FACTUAL AND PROCEDURAL BACKGROUND


 Real Party in Interest, Inocencia Liano, was employed by American National from 1982 until
she was terminated for poor performance on August 8, 2005. On July 12, 2006, Liano filed the
underlying lawsuit in this case, alleging violations of the provisions of ch. 21 of the Texas Labor
Code which prohibit age-related employment discrimination. (1) Specifically, Liano alleged that the
true motivation for her termination was that she was 60 years old, and, despite American National's
having given her positive performance evaluations, the Company replaced her with a younger
worker.

 After answering the suit, American National moved to compel arbitration of Liano's claim,
under provisions contained in two documents. The first arbitration provision is contained in a
collective-bargaining agreement ("CBA") between the Company and the United Food and
Commercial Workers International Union ("UFCW" or "the Union"). Liano was not a direct
signatory to the CBA. (2) The second document is a Home Service Agent's Agreement (the "Agent's
Agreement" or "Form 83") signed by Liano and by an American National representative, but not by
the Union.

 Both parties assume that the arbitration provisions in question are governed by the Federal
Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. (3) We will assume that the FAA applies to the Agent's
Agreement. (4)

 The arbitration provisions, which are substantially identical in the CBA and in Form 83,
provide in relevant part as follows:

 1. In the event the Union is dissatisfied with the resolution of a grievance pursuant
to the provisions of [the grievance procedure provided in the CBA], the Union may
submit the grievance to final and binding arbitration pursuant to the following:


 [Subparagraphs A-E, referred to as the "arbitration procedure"].


 2. The arbitration procedure established herein is considered by the parties to be the
most expeditious and most effective manner to resolve any and all disputes, potential
disputes and/or claims as between the Company, the Union, and/or Agents, their
heirs and assigns and is the exclusive method for the resolution of all such claims
and/or disputes. The Company, the Union, and the Agents covered by this
Agreement shall be required to exhaust all available remedies through grievance
and/or arbitration as provided for herein prior to proceeding to a court of law, state
or federal, or any administrative agency or other regulatory body.


(Emphases supplied.)


 The trial court denied American National's motion to compel arbitration, without stating
grounds for the denial. American National filed this mandamus action and argues in a single issue
that the trial court clearly abused its discretion by denying the motion. Liano responds by arguing
that the Company is not entitled to mandamus relief, based in part on the United States Supreme
Court's Alexander decision, in which the Court held that a union cannot, by means of a collective
bargaining agreement, prospectively waive an individual's statutory employee rights. See Alexander
v. Gardner-Denver Co., 415 U.S. 36, 52, 94 S. Ct. 1011, 1021, 7 Fair Empl. Prac. Cas. (BNA) 81
(1974). (5)

DISCUSSION

 Mandamus is an extraordinary remedy, available only to correct a clear abuse of discretion
when there is no other adequate remedy by appeal, as is the case when a party is erroneously denied
its contractual arbitration rights under the Federal Arbitration Act. See In re D. Wilson Constr. Co.,
196 S.W.3d 774, 780-81 (Tex. 2006) (orig. proceeding) (citing Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992) (orig. proceeding), and Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272-73 (Tex.
1992)). A trial court has no discretion, and therefore clearly abuses its discretion, by misapplying
the law to the facts. See Walker, 827 S.W.2d at 840. A clear failure by the trial court to analyze or
apply the law correctly will constitute a clear abuse of discretion. Id. It is the relator's burden to
show that the trial court could reasonably have reached only one decision. Id. We will not disturb
a trial court's decision, unless it is shown to be arbitrary and unreasonable. Id.

 Specifically, in evaluating a motion to compel arbitration, the reviewing court must first
determine whether a valid arbitration agreement exists between the parties, applying ordinary
principles of state contract law. Wilson Constr., 196 S.W.3d at 781. The court must then determine
whether the agreement encompasses the claims raised in the motion. Id.

 Generally, we interpret arbitration provisions under the FAA with a presumption in favor of
arbitration. See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227, 20 Indiv. Empl. Rts. Cas.
(BNA) 1315 (Tex. 2003). However, in a line of cases beginning with Alexander in 1974, the United
States Supreme Court has carved out a small number of arbitration provisions which are to be
afforded special treatment. 415 U.S. 36, 94 S. Ct. 1011 (1974). Under Alexander, a collective-bargaining agreement cannot prospectively waive an individual employee's statutory rights. See
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33-34, 111 S. Ct. 1647, 1656, 55 Fair Empl.
Prac. Cas. (BNA) 1116 (1991) (citing Alexander, 415 U.S. at 49-50, 94 S. Ct. at 1020). As Justice
Powell explained in Alexander:

 A further concern is the union's exclusive control over the manner and extent
to which an individual grievance is presented. In arbitration, as in the collective-
bargaining process, the interests of the individual employee may be subordinated to
the collective interests of all employees in the bargaining unit. Moreover, harmony
of interest between the union and the individual employee cannot always be
presumed, especially where a claim of racial discrimination is made. And a breach
of the union's duty of fair representation may prove difficult to establish. In this
respect, it is noteworthy that Congress thought it necessary to afford the protections
of Title VII against unions as well as employers. (6)


Alexander, 415 U.S. at 58 n.19, 94 S. Ct. at 1024 n.19 (citations omitted); see also Wright v.
Universal Maritime Serv. Corp., 525 U.S. 70, 75-76, 119 S. Ct. 391, 394, 159 L.R.R.M. (BNA) 2769
(1998) (employee's individual rights cannot be prospectively waived by union's agreement to an
arbitration provision in the CBA) (citing Alexander, 415 U.S. at 51, McDonald v. City of West
Branch, 466 U.S. 284, 104 S. Ct. 1799, 115 L.R.R.M. (BNA) 3646 (1984), and Barrentine v.
Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 101 S. Ct. 1437, 24 Wage & Hour Cas. (BNA) 1284
(1981)).

 Although the Court has limited the decision, Alexander has not been overruled. See, e.g.,
Gilmer, 500 U.S. at 33-34, 111 S. Ct. at 1656-57 (distinguishing Alexander and holding that
individual employee's prospective waiver of access to judicial forum was valid, because arbitration
provision was contained in individually-signed employment agreement, not in a CBA); see also
Wright, 525 U.S. at 75-77, 119 S. Ct. at 394-95 (noting the tension between the decisions in
Alexander and Gilmer, but refusing to address the validity of a union-negotiated waiver of employee
rights). The Court has continued to express concern over the adequacy of CBA arbitration
procedures to protect the statutory rights of aggrieved employees. See Barrentine, 450 U.S. at 737,
101 S. Ct. at 1443; McDonald, 466 U.S. at 289, 104 S. Ct. at 1802.

 Like the arbitration provisions in the CBA, Form 83 gives the Union absolute control over
whether to pursue an individual employee's complaint or claim to arbitration. Therefore, although
Liano individually signed the Agent's Agreement, its arbitration provision raises the same concerns
which the Court expressed in Alexander regarding the potential tensions between the Union and the
individual. (7)

 The Seventh Circuit Court of Appeals has addressed the same issue presented to us today. 
See Pryner v. Tractor Supply Co., 109 F.3d 354, 154 L.R.R.M. (BNA) 2806 (7th Cir.), cert. denied,
522 U.S. 912 (1997). Chief Justice Posner explained the rationale underlying Pryner as follows:

 The essential conflict is between majority and minority rights. The collective
bargaining agreement is the symbol and reality of a majoritarian conception of
workers' rights. An agreement negotiated by the union elected by a majority of the
workers in the bargaining unit binds all the members of the unit, whether they are
part of the majority or for that matter even members of the union entitled to vote for
union leaders--they need not be. The statutory rights at issue in these two cases are
rights given to members of minority groups because of concern about the
mistreatment of minorities by majorities. We may assume that the union will not
engage in actionable discrimination against minority workers. But we may not
assume that it will be highly sensitive to their special interests, which are the
interests protected by Title VII and the other discrimination statutes, and will seek
to vindicate those interests with maximum vigor. The employers' position delivers
the enforcement of the rights of these minorities into the hands of the majority, and
we do not think that this result is consistent with the policy of these statutes or
justified by the abstract desirability of allowing unions and employers to cut their
own deals. And we are given no reason to believe that the ability of unionized
workers to enforce their statutory rights outside of the grievance machinery
established by collective bargaining agreements is undermining labor relations.


109 F.3d at 362-63 (citations omitted).


 Much like the plight of the employees in Pryner, both the CBA and Form 83 in this case
limit Liano's access to an arbitrable forum in which to resolve her claim, by giving the Union the
sole discretion whether (and how far) to pursue her claim in the contractual grievance and arbitration
procedure. (8) See Pryner, 109 F.3d at 362. If Liano attempted to initiate the grievance procedure and
the Union and American National were unable to resolve the dispute, the CBA and the Agent's
Agreement would permit only the UFCW to decide whether to take the case to arbitration. The
provision does not guarantee Liano an opportunity to exercise her individual, statutorily-protected
rights against American National (and/or against the UFCW).

 Taken one step further, in this type of union-controlled grievance procedure, an employee
who wished to sue her union, alleging a statutory discrimination claim, would be forced to try to
persuade that same union to pursue the grievance and arbitration procedure on her behalf, against
itself. In any case, if the union (predicably) should decide that it did not wish to pursue the
employee's claim against itself, the employee would be denied access to any forum for relief. That
is to say, the employee's only avenue for relief, arbitration, would be foreclosed, if the union refused
to pursue the grievance/arbitration procedure to its conclusion.

 We recognize that, much like the employee in Gilmer, Liano signed an individual
employment agreement in which she seems to have prospectively waived her right to a judicial
forum to adjudicate claims which she might later assert against the Company. Cf. Gilmer, 500 U.S.
at 23, 111 S. Ct. at 1650. The execution of an individual agreement, in great part, led the Court to
uphold that arbitration clause. See id. at 35, 111 S. Ct. at 1657. The critical issue in this case,
however, is not that the employee signed an individual agreement. Individual employment
agreements containing arbitration clauses are commonplace and remain unaffected by Alexander. 
The critical issue in this case is that, subject to the union's largely-unfettered discretion, the terms
of the CBA (and the identically-worded Agent's Agreement) prospectively require the employee to
waive her right to any forum in which to assert statutory claims against her employer and/or the
union. It is this prospective mandatory waiver of all fora that distinguishes this case from Gilmer. 
This case therefore pointedly raises the precise concerns the United States Supreme Court expressed
in Alexander and Chief Justice Posner described in Pryner regarding the conflict between a
employee's right to pursue a statutory claim and a union's interest in protecting itself, as well as the
perceived interests of the majority, (9) within the collective-bargaining unit.

 In sum, in accordance with the rationale articulated by the United States Supreme Court in 
Alexander, the arbitration provision in the Agent's Agreement cannot be used to compel Liano to
arbitrate the discrimination claim she has alleged against her employer, as it is not an effective
waiver of her right to pursue her claim in court. Therefore, we hold that the trial court did not abuse
its discretion by denying Relator's motion to compel arbitration.CONCLUSION

 Mandamus relief is denied.

 KENNETH R. CARR, Justice


December 13, 2007


Before McClure, J., Carr, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment
1. Liano does not assert any federal claims in her petition.
2. The record does not reflect whether Liano was actually a member of the UFCW, but, for purposes relevant
to this opinion, whether she was a member is legally immaterial. Because she was employed within the bargaining unit
covered by the CBA, Liano was deemed by law to have assigned her rights to bargain with her employer to the Union. 
See 29 U.S.C. § 159(a).
3. But cf. Frank Elkouri & Edna Asper Elkouri, How Arbitration Works 27 (Alan M. Ruben ed., 6th ed.
2003) ("[T]he statutory basis for labor arbitration is Section 301 of the [Labor-Management Relations Act] [29 U.S.C.
§ 185], [while] the statutory basis for employment arbitration is the Federal Arbitration Act . . ."). However, this Court
is not barred from hearing the case, because we have concurrent jurisdiction of sec. 301 actions. See Harris v. Edward
Hyman Co., 664 F.2d 943, 944 n.2, 109 L.R.R.M. (BNA) 2326 (5th Cir. 1981).
4. When a state trial court denies a motion to compel arbitration and the underlying contract is governed by the
FAA, the decision is reviewable by mandamus. In re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007) (citing In re
Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005), and EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 88, 69 Empl.
Prac. Dec. (CCH) ¶ 44,423 (Tex. 1996)).
5. Followed in Texas by Domingues v. City of San Antonio, 985 S.W.2d 505, 508-09 (Tex. App.--San Antonio
1998, pet. denied).
6. Although Alexander involved a claim of racial discrimination, Congress, in enacting the Age Discrimination
in Employment Act, and the Texas Legislature, in enacting the Texas Commission on Human Rights Act, both likewise
considered it desirable to apply to unions the age-discrimination prohibitions contained therein. See 29 U.S.C. § 623(c)
and Tex. Lab. Code Ann. § 21.053.
7. As counsel for Relator conceded at oral argument, Form 83, although individually signed by Liano, does not
supplement rights provided to employees under the CBA. Indeed, by signing the Agent's Agreement, an employee
expressly agrees to be individually bound by the terms of the CBA. The CBA, in turn, dictates that the employee will
not be compensated, unless and until she signs an Agent's Agreement.
8. The record is silent as to whether Liano ever sought to persuade the Union to invoke the contractual grievance
procedure.
9. Who, in this case, are presumably younger than Liano.