**Cleotis JOHNSON, Plaintiff–Appellant,**

v.

**BODINE ELECTRIC CO. and International Brotherhood of Electrical Workers, Local 601, Defendants–Appellees.**

No. 96–2719.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1998.

Decided April 7, 1998.

---

Hille R. Sheppard (argued), Sidley & Austin, Chicago, IL, for Plaintiff–Appellant.

William W. Cody, Stephen B. Maule (argued), McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for defendant–appellee Bodine Electric Company.

J. Steven Beckett, Carol A. Dison (argued), Beckett & Webber, Urbana, IL, for defendant–appellee International Brotherhood of Electrical Workers.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Cleotis Johnson, an African–American journeyman electrician, sued Bodine Electric Company and the International Brotherhood of Electrical Workers (IBEW), Local 601 for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. The district court dismissed the suit for lack of jurisdiction because Johnson had not exhausted the grievance procedures mandated by the collective bargaining agreement (CBA) between Local 601 and Bodine. After the district court's decision, we held in *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir.), *cert. denied,* —— U.S. ——, ——, 118 S.Ct. 294, 295, 139 L.Ed.2d 227 (1997), that a union cannot consent in a CBA on behalf of a worker to arbitration of the worker's Title VII claims. Therefore, we reverse the district court's judgment.

## I. Facts

Johnson is a member of Local 11 of the IBEW in Los Angeles. In 1993, Johnson moved to Champaign, Illinois, which is covered by Local 601 of the union. Pursuant to the Champaign area CBA, as an out-of-town union member, Johnson was a "group two" worker, meaning that he would be referred for jobs only if no local union members ("group one") were available. Likewise, in the event of layoffs, Johnson would be laid off before local union members. Johnson had to work in Local 601 for one year before he could join the Local and receive the same preferential treatment in hiring and firing as group one members.

In July 1994, Johnson obtained work through Local 601. Later that year, he was assigned to work at the Christie Clinic site in Champaign, which Bodine operated. Johnson alleges that while at Bodine, he was subjected to a racially discriminatory hostile work environment, and that he was laid off from Bodine in June 1995—one month before he would have been entitled to join Local 601—because of his race.

The CBA at issue in this case was negotiated between Local 601 and the local chapter of the National Electrical Contractors Association (NECA). By virtue of its assent and membership in NECA, Bodine is a party to the CBA. The grievance provision of the CBA states that:

All grievances or questions in dispute shall be adjusted by the duly authorized representatives of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor–Management Committee.

The Labor–Management Committee, a six-member creation of the CBA, is composed of three union representatives and three management representatives. The Committee decides issues by majority vote. If the Committee fails "to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations [CIR] for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding on both parties hereto." The CIR is a national labor-management committee composed of twelve members—six union, six management—that by its own description is designed to prevent strikes in the electrical contracting industry.

Johnson sued pursuant to Title VII without submitting his claim to the CBA's mandatory dispute resolution process. The district court dismissed the suit for lack of subject matter jurisdiction. Johnson appealed pro se, but we appointed counsel for him to consider the implications of our recent decision in *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir.), *cert. denied*, —— U.S. ——, ——, 118 S.Ct. 294, 295, 139 L.Ed.2d 227 (1997).

## II. Discussion

In *Pryner*, we considered whether a CBA could compel employees to arbitrate their claims under federal employment discrimination laws, such as Title VII. The two plaintiffs in that consolidated appeal were union members who wished to bring employment discrimination suits without waiting for the completion of CBA-mandated grievance proceedings. We noted that the question whether to allow a CBA to control the forum in which workers adjudicate claims involving statutory rights implicated a conflict between majority and minority rights:

The collective bargaining agreement is the symbol and reality of a majoritarian conception of workers' rights. An agreement negotiated by the union elected by a majority of the workers in the bargaining unit binds all the members of the unit, whether they are part of the majority or for that matter even members of the union entitled to vote for union leaders—they need not be. The statutory rights at issue in these two cases are rights given to members of minority groups because of concern about the mistreatment (of which there is a long history in the labor movement) of minorities by majorities.... The employers' position delivers the enforcement of the rights of these minorities into the hands of the majority, and we do not think that this result is consistent with the policy of these statutes....

*Id.* at 362–63 (citation omitted). *Pryner* therefore held that a "union cannot consent *for* [an] employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement." *Id.* at 363.

Johnson argues that *Pryner* controls this case. The appellees attempt to distinguish *Pryner* in two ways. First, they argue that in the CBA at issue in *Pryner*, the worker could not raise a grievance on his own; the union retained discretion to raise a grievance on behalf of an aggrieved worker. On the other hand, under the CBA at issue here, a worker can institute a grievance on his own. The distinction the appellees attempt to draw is not persuasive. Under this CBA, the only grievances that a worker can prosecute on his own are disputes between the worker and the union over the union's handling of the system of referrals for work. For all other disputes, a worker must take his grievance to the union representative at the job site, who then meets with a management representative. The union, therefore, has the same broad discretion in handling workers' claims that the unions

had in *Pryner.* As the court in *Pryner* stated, "[W]e may not assume that [the union] will be highly sensitive to ... the interests protected by Title VII...." 109 F.3d at 362. Thus, while the union in this case may not exert total control over a worker's grievances, the grievance procedure at issue implicates the same "essential conflict ... between majority and minority rights" identified in *Pryner. Id.*

Moreover, *Pryner* did not distinguish between cases in which an employee can prosecute grievances by himself and cases in which an employee cannot. Rather, *Pryner's* description of when arbitration of Title VII claims would be allowable in an employment context shows that *Pryner* applies to all CBAs:

> We are not holding that workers' statutory rights are never arbitrable. They are arbitrable if the worker consents to have them arbitrated. If the worker brings suit, the employer suggests that their dispute be arbitrated, the worker agrees, and the collective bargaining agreement does not preclude such side agreements, there is nothing to prevent a binding arbitration.

*Id.* at 363.

■ Second, the appellees try to distinguish *Pryner* by asserting that Johnson's complaints are contractual in nature. They argue that Johnson's complaint boils down to a complaint about the CBA's layoff procedure, and that since evaluating his claim will necessarily involve interpreting the CBA, Johnson should be forced to utilize the CBA's grievance procedure. We are mindful that "interpretation of the collective bargaining agreement is a question for the arbitrator." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). However, we must first determine whether Johnson's claim is arbitrable. Generally, the question of arbitrability is for the court. *See AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 545, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964). Moreover, while "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,"

*Nielsen v. Piper, Jaffray & Hopwood, Inc.,* 66 F.3d 145, 148 (7th Cir.1995) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)), a worker cannot be forced to arbitrate Title VII claims. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

We cannot accept the appellees' characterization of Johnson's suit. Although Johnson does in part contest the legality of his layoff, he does not argue that the layoff violated the CBA. Rather, he complains that he was laid off for racially discriminatory reasons. He also argues that he was subjected to a hostile work environment while at Bodine. Neither the issue of race discrimination, nor any other federal statutory employment right, is mentioned directly or indirectly in the CBA. While the district court may need to interpret the CBA as an incidental matter, Johnson's complaints are based primarily on federal anti-discrimination statutes. Requiring Johnson to arbitrate a matter that he has not agreed to arbitrate simply because it touches on a CBA provision would eviscerate Pryner and would be inconsistent with the rule that a party can only be forced into arbitration if he has contractually agreed to arbitrate. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 1924–25, 131 L.Ed.2d 985 (1995). Therefore, this case is not distinguishable from *Pryner.*

Lastly, the defendants attack *Pryner* itself. The union explicitly asks us to reevaluate *Pryner* because it is "over-broad"; Bodine argues that there is "broad acceptance of the use of arbitration in resolving Title VII disputes." This argument misconstrues both *Pryner* and Johnson's claim. The issue here is not whether arbitration is acceptable or encouraged in the Title VII setting, but whether a union's agreement to an arbitration clause in a CBA constitutes consent to arbitrate individual workers' Title VII claims. On this question, most circuits agree with the result in *Pryner. See, e.g., Penny v. United Parcel Serv.,* 128 F.3d 408, 414 (6th Cir. 1997); *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 526 (11th Cir.1997); *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1453 (10th Cir.), *cert. granted and judgment vacated,* —— U.S. ——, 118 S.Ct. 2364, —— L.Ed.2d —— (1998); *Varner v.*

*National Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997); *Tran v. Tran,* 54 F.3d 115, 117 (2d Cir.1995). Only the Fourth Circuit has held that a CBA arbitration clause can bar an individual worker's Title VII claim.[1]  *See Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996).[2]  We therefore see no need to reevaluate *Pryner.*

■  Neither *Pryner* nor our decision here means that we find arbitration inappropriate in the Title VII context.  We hold simply that a CBA cannot be the source of the consent to arbitrate an individual worker's Title VII claims.  We therefore reverse the district court's judgment and remand for further proceedings.

1. A divided Third Circuit panel initially agreed with the Fourth Circuit, but that decision was later vacated. *See Martin v. Dana Corp.,* 114 F.3d 421 (3d Cir.), *vacated and rehearing en banc granted,* 114 F.3d 428 (3d Cir.1997). The en banc court referred the case back to the original panel to determine whether Martin could initiate arbitration on his own under the CBA at issue. Finding that Martin could not, the panel reversed itself and found that the CBA did *not* bar Martin's suit. *See Martin v. Dana Corp.,* 135 F.3d 765 (3d Cir.1997) (unpublished order). The panel's later decision did not address the question whether a CBA grievance provision could ever bar a worker from bringing a Title VII claim in court.

2. While this case was under consideration, the Supreme Court granted certiorari in a case from the Fourth Circuit that had found that a CBA with an arbitration clause covering "all matters affecting ... terms and conditions of employment" barred a worker from bringing an Americans with Disabilities Act claim in federal court. *See Wright v. Universal Maritime Serv. Corp.,* 121 F.3d 702, 1997 WL 422869 (4th Cir.1997) (table; unpublished order), *cert. granted,* —— U.S. ——, 118 S.Ct. 1162, 140 L.Ed.2d 174 (1997).