Clayton COLLINS, Leslie Keller, Harry McKeddie, Timothy Hughes, Samuel Briggins, Wayne Paschal, Robert Jackson, and George R. Egnor, Plaintiffs,

v.

MICHELIN NORTH AMERICA, INC. and it affiliated division, Uniroyal Goodrich Tire Manufacturing, and United Steel Workers of America, Local 715, Defendant.

No. 1:99–CV–235.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 14, 1999.

Robert M. Kelso, Thomas E. Schulte, Kightlinger and Gray, Indianapolis, IN, for Clayton Collins, Leslie Keller, Harry McKeddie, Timothy Hughes, Samuel Briggins, Wayne Paschal, Robert Jackson, George R. Egnor, plaintiffs.

Peter R. Bulmer, Theresa M. Gallion, Craig M. Hoetger, Jackson Lewis Schnitzler and Krupman, David L. Gore, Chicago, IL, James S. Robinson, United Steelworkers of America, Gary, for Michelin North America, Inc., and its affiliated division, Uniroyal Goodrich Tire Manufacturing, United Steel Workers of America, Local 715, defendants.

### MEMORANDUM OF DECISION
### AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on "Defendant Michelin North America, Inc.'s Motion to Dismiss, or, Alternatively, to

Compel Arbitration" filed August 20, 1999. Plaintiffs responded to that motion on September 22, 1999 to which defendant replied on October 12, 1999. For the following reasons, the motion to dismiss will be denied.

### Discussion

For present purposes, the relevant facts may be summarized briefly as follows. On June 16, 1999, plaintiffs, who are (or were) Michelin employees, filed a complaint alleging disability discrimination under the Americans with Disabilities Act of 1990. Plaintiffs are (or were) employed at the Woodburn, Indiana Uniroyal plant and represented by the United Steelworkers Union Local 715. The terms and conditions of plaintiffs' employment are governed to a great extent by the terms of the collective bargaining agreement (contract) negotiated between the union and Michelin. Neither the Union nor the plaintiffs filed grievance(s) under the contract regarding the claims asserted in plaintiffs' complaint.

At issue in the presently pending motion is whether the activities about which plaintiffs complain in their complaint need be arbitrated pursuant to the terms of the collective bargaining agreement. The parties hinge their respective positions on the Supreme Court's decision in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) and the Seventh Circuit's decisions in *Pryner v. Tractor Supply Co.*, 109 F.3d 354 (7th Cir.1997) and *Johnson v. Bodine Electric Co.*, 142 F.3d 363 (7th Cir.1998). A case-by-case review of those decisions makes clear to the court that the motion to dismiss or compel arbitration should be denied.

In *Wright*, the Supreme Court was presented with "the question of whether a general arbitration clause in a collective-bargaining agreement (CBA) requires an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990...". 119 S.Ct. at 393–93. Below, "the Fourth Circuit had concluded that the general arbi-

tration provision in the CBA governing [plaintiff's] employment was sufficiently broad to encompass a statutory claim arising under the ADA, and that such a provision was enforceable." *Id.* at 394. Recognizing the obvious tension between the *Gardner–Denver* line of cases which indicated that there could be no prospective waiver of an employee's rights under Title VII and the *Gilmer v. Interstate/Johnson* line of cases which indicated that a claim brought under the Age Discrimination in Employment Act could be subject to compulsory arbitration pursuant to an arbitration provision in a securities registration form, the Supreme Court in *Wright* "f[ou]nd it unnecessary to resolve the question of the union-negotiated waivers, since it [was] apparent...on the facts and arguments presented...that no such waiver ha[d] occurred." *Id.* at 395. The Supreme Court then wrote:

> ...In collective bargaining. agreements, we have said, 'there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'

That presumption, however, does not extend beyond the reach of the principle rationale that justifies it, which is that arbitrators are in a better position than courts *to interpret the terms of a CBA* .... This rationale finds support in the very text of the LMRA, which announces that '[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising *over the application of interpretation of an existing collective bargaining agreement* ....' The dispute in the present case, however, ultimately concerns not the application of interpretation of the CBA, but the meaning of a federal statute.

*Id.* at 395–96 (citations omitted, italics in original). Wrapping up, the Supreme Court wrote:

Not only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear. . . .

We think the same standard applicable to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination. Although that is not a substantive right [citing *Gilmore*], and whether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner–Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.

*Id.* at 396.

The language just quoted in the excerpted passage seems to make clear that if there can be a union-negotiated waiver of the employee's statutory right to a judicial claim involving employment discrimination, it must be an explicit waiver. Present defendant claims that it was in this case because the contract states that there "shall be no unlawful discrimination by reason of race, color, age, disability, religion, sex, or national origin." The contract goes on to provide that "[n]ot withstanding any language in this agreement, the Company may take any action necessary to comply with the Americans with Disabilities Act" and that if the parties cannot otherwise resolve any dispute regarding the ADA "the matter may be submitted to the grievance and arbitration process in accordance with Article VII of this agreement."

"May," as used in the collective bargaining agreement is of course a permissive term and would not appear to square with the notion in *Wright* that the requirement to arbitrate "be particularly clear." Moreover, the collective bargaining agreement, while it does reference the ADA (albeit in the context of the employer being allowed to make accommodations pursuant to the statute) and does reference the fact that discrimination on the basis of disability will not be tolerated, does not, at least so far as the parties have made reference to it in this Court, contain explicit language which would advise the employees as to what rights they have under the ADA and that they are giving up their right to have any alleged violations of those rights heard in a federal forum.[1] This deficiency is particularly troublesome when it is considered that *Wright* cited *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983) for the proposition that the Court "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated' . . . . the waiver must be clear and unmistakable."[2]

---

1. Defendant argues that the problem with the contract in *Wright* was that it did not create a contractual right coextensive with the plaintiffs' federal statutory right because the contract merely stated that no provision shall be violative of any Federal or State law, whereas here, the contract provides that "there shall be no unlawful discrimination by reason of race, color, age, disability, religion, sex or national origin." This, in the Court's view does not, as defendant's suggest, "clearly establish[ ] contract rights for employees that are coextensive with their rights under the ADA," particularly given the language that "the Company *may* take any actions necessary to comply with the" ADA.

2. In its reply brief, defendant makes much of the fact that the claims presented on behalf of the plaintiffs deal, almost exclusively, with the fact that they were not recalled after the strike and therefore plaintiffs' claim of "unlawful employment practices" must be read in light of the systematic plan for recall which the union and the company negotiated—that is, they are rights conferred by that agreement and the collective bargaining agreement and as such subject to arbitration. This, however, misconstrues plaintiffs' complaint that they were discriminated against because of their disabilities—an argument akin to that presented and rejected in *Wright* when the respondents "argue[d] that Wright is not qualified for the position as the CBA requires, but even if that were true, he would *still*

Contrary to defendant's assertion, *Pryner*, although distinguishable, does not counsel a different result. The issue in *Pryner* was whether "arbitration clauses in collective bargaining agreements other than in the maritime, railroad, and other transportation industries [are] subject to the Federal Arbitration Act." In the opinion for the court, Chief Judge Posner did write, as defendant's note, that "[m]ost important, the grievance and arbitration procedure can be invoked only by the union and not by the worker," 109 F.3d. at 362, a situation not presented here since "nothing in the contract's grievance procedure precludes employees from filing grievances on their own." While that may be true, that neglects to recognize that Judge Posner also wrote at length about the potential problem of union representation and pursuit of a member's claim in light of the union's various loyalties (*viz* the majority, assuaging the company in some circumstances, and the like) and then concluded by writing: "All we are holding is that the union cannot consent *for* the employees by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the grievance." *Id.* at 363 (italics in original).

Even if *Pryner* is read to only encompass cases where the union retained total discretion to raise a grievance on behalf of an aggrieved worker, *Johnson* appears to answer any question that the same result applies where a worker can institute a proceeding on his own and where the union does not exert total control over the worker's grievance. As *Johnson* points out, "*Pryner* did not distinguish between causes in which an employee can prosecute grievances by himself and cases in which an employee cannot. Rather, *Pryner's* description of when arbitration of Title VII claims would be allowable in an employment context shows that *Pryner* applies to all CBAs...". 142 F.3d at 366. The Seventh Circuit went on in *Johnson* to "hold

simply that a CBA cannot be the source of consent to arbitrate an individual worker's Title VII claims." *Id.* at 367. "Requiring [plaintiff] to arbitrate a matter that he has not agreed to arbitrate simply because it touches on a CBA provision would eviscerate *Pryner* and would be inconsistent with the rule that a party can only be forced into arbitration if he contractually agreed to arbitrate." *Id.* at 366 So too in this case.

In sum, this Court does not see the plaintiffs' complaint as a veiled attempt to cloak what is essentially a claim based on a violation of the CBA into a statutory claim under the ADA. While plaintiffs no doubt were not happy with the way the recalls occurred (and some were no doubt unhappy with their assignments or wages), their complaint is not that that procedure(s) violate or violated the CBA, but rather that it violated the ADA. *Wright, Pryner,* and *Johnson* support the conclusion that these plaintiffs should not have such claims subjected to arbitration.

### Conclusion

On the basis of the foregoing, "Defendant Michelin North America, Inc.'s Motion to Dismiss, or, Alternatively, to Compel Arbitration" filed August 20, 1999 is DENIED.

---

prevail if the refusal to hire violated the ADA." *Id.* at 396 (italics in original). So too here if plaintiffs were not recalled under the

agreement but the reason for them not being recalled was because defendant(s) violated the ADA, they would be entitled to prevail.