Christian THOMSEN, Petitioner-Respondent-Cross-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Co-Appellant-Cross-Respondent,

TOWN OF MADISON, Respondent-Appellant-Cross Respondent.

Court of Appeals

*No. 99–1730. Submitted on briefs January 11, 2000.—Decided March 30, 2000.*

## 2000 WI App 90

(Also reported in 610 N.W.2d 155.)

On behalf of the Town of Madison, respondent-appellant-cross-respondent, the cause was submitted on the briefs of *David E. Rohrer* and *Kirk D. Strang* of *Lathrop & Clark LLP.*

On behalf of the Wisconsin Employment Relations Commission, respondent-co-appellant-cross-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *John D. Niemisto*, assistant attorney general.

On behalf of Christian Thomsen, the petitioner-respondent-cross-appellant, the cause was submitted on the briefs of *John C. Talis* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer.*

Before Eich, Vergeront and Deininger, JJ

¶ 1. VERGERONT, J. This appeal concerns the relationship between certain provisions of the Wisconsin Municipal Employment Relations Act (MERA)—WIS. STAT. §§ 111.70–111.77 (1997–98)[1]—and the federal statutory rights of individual employees. The Town of Madison filed a complaint with the Wisconsin Employment Relations Commission (WERC) alleging that a Town employee refused to sign a Memorandum of Understanding drafted by the Town's attorney after a mediation ses-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

sion on a grievance concerning the employee's discharge. The employee, Christian Thomsen; the Town's attorney; and a representative of the Wisconsin Professional Police Association (WPPA), the exclusive bargaining representative for Thomsen's collective bargaining unit, were present at the mediation session. WERC concluded that Thomsen's refusal to sign the Memorandum of Understanding constituted a violation of a "collective bargaining agreement previously agreed upon" under § 111.70(3)(b)4 and ordered him to sign the Memorandum. The trial court affirmed that order, with the modification that the waiver of claims provision in the Memorandum did not include a waiver of Thomsen's right to pursue a claim under 42 U.S.C. § 1983.

¶ 2. WERC and the Town appeal, contending the trial court erred in modifying the Memorandum to exclude the 42 U.S.C. § 1983 waiver because WERC had the authority to order Thomsen to sign the Memorandum unmodified. Thomsen cross-appeals, contending that WERC's decision should be reversed.[2] We conclude that even if Thomsen orally agreed to waive all federal statutory claims in the mediation session, that agreement was not a collective bargaining agreement within the meaning of WIS. STAT. § 111.70(3)(b)4 and (1)(a). Therefore, he did not violate § 111.70(3)(b)4 by refusing to sign the Memorandum

---

[2] A respondent need not file a cross-appeal if seeking an affirmance of the circuit court's order or judgment on other grounds, but must file a cross-appeal if seeking a modification of that order or judgment. *See State v. Alles*, 106 Wis. 2d 368, 390, 316 N.W.2d 378 (1982); WIS. STAT. § 809.10(2)(b). Thomsen has not followed this distinction in organizing his legal arguments, but we are satisfied that because of the cross-appeal we have jurisdiction to issue the mandate we arrive at.

insofar as it contained a waiver of such claims, and WERC did not have the authority to order him to sign the Memorandum as drafted. Accordingly, we reverse and remand to the circuit court with instructions to reverse and remand to WERC for further proceedings consistent with this opinion. We also decide one issue raised by Thomsen that may arise on remand. We conclude that when WERC reverses the decision of a hearing examiner based on an additional factual finding involving a dispute on witness credibility that has not been resolved by the examiner, WERC's decision must reflect that it consulted with the examiner or had access to the examiner's notes on witness demeanor.

## BACKGROUND

¶ 3. At the time of Thomsen's termination in August 1994, he held the position of police sergeant, and was also president of the Town of Madison Professional Police Association (TMPPA), the local chapter for WPPA. Pursuant to the grievance procedure in the collective bargaining agreement (CBA)[3] between WPPA and the Town, Thomsen, as TMPPA president, filed a grievance concerning his termination, asserting that he was terminated without just cause. The Town denied the grievance, contending that there was not a contract violation "where an employee has admitted the physical inability to perform the essential functions of the position."

---

[3] We use CBA to refer to the 1994–95 agreement between the Town and WPPA and, when discussing other cases, to refer to agreements between other exclusive bargaining representatives and employers. When we use CBA we are not referring to grievance settlements or to the statutory language of "collective bargaining agreement" that is at issue in this case.

¶ 4. When the grievance remained unresolved after the second step of the procedure, WPPA business representative Steven Urso requested mediation using representatives of WERC. The session was held on January 17, 1995. Thomsen, Urso, and the Town's attorney, Keith Strang, as well as the mediators were all present. They discussed settlement terms, including a waiver of claims provision. The factual disputes concerning the terms discussed and their finality will be covered in more detail later, but it is undisputed that following this session Strang drafted a Memorandum of Understanding, which, according to Strang and Urso, accurately reflected the settlement reached.

¶ 5. The Memorandum provided that the Town agreed to certify, upon the necessary medical information from WPPA and Thomsen, that Thomsen was injured while performing his duties as a police officer. Thomsen and the union agreed to stay, and refrain from commencing, any grievances or other actions against the Town while his duty disability application was processed, and, upon favorable resolution of the application, to drop all grievances and claims and not to refile them in any other forum. Upon the satisfaction of these obligations, Thomsen would be treated as having retired in good standing due to a duty disability. Paragraph 5 of the Memorandum provided:

> In consideration of the foregoing, Mr. Thomsen and the Union hereby agree to fully waive and forever release discharge [sic] the Town, its present and former agents, assigns and subsidiaries of any and all claims, demands, damages, actions and causes of action of whatever kind or nature which they have or may have arising out of Mr. Thomsen's employment, his separation from employment, and any and all other employment matters without limi-

501

tation including, but not limited to, matters arising at law, in equity, under the Town's collective bargaining agreement with the Union, or in state or federal agencies, courts, or other tribunals of competent jurisdiction.

¶ 6. When Thomsen refused to sign this Memorandum, Urso informed the Town and Thomsen that WPPA was withdrawing the grievance. The Town then filed the complaint with WERC, alleging that WPPA and Thomsen had refused to execute a bargaining agreement, refused to bargain in good faith, and violated the terms of a collective bargaining agreement previously agreed upon in violation of WIS. STAT. § 111.70(3)(b)3, (3)(b)4 and (3)(c).[4] The Town and

---

[4] WISCONSIN STAT. § 111.70(3)(b)3, (3)(b)4 and (3)(c) provide in part:

(3) PROHIBITED PRACTICES AND THEIR PREVENTION.
. . . .
(b) It is a prohibited practice for a municipal employe, individually or in concert with others:
. . . .
3. To refuse to bargain collectively with the duly authorized officer or agent of a municipal employer, provided it is the recognized or certified exclusive collective bargaining representative of employes in an appropriate collective bargaining unit. Such refusal to bargain shall include, but not be limited to, the refusal to execute a collective bargaining agreement previously agreed upon.
4. To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them.
. . . .
(c) It is a prohibited practice for any person to do or cause to be done on behalf of or in the interest of municipal employers or municipal employes, or in connection with or to influence the out-

WPPA subsequently stipulated to a dismissal of WPPA upon WPPA's agreement to sign the Memorandum.

¶ 7. After an evidentiary hearing and briefing on the complaint against Thomsen, the hearing examiner issued a decision that contained these legal conclusions. Thomsen was not acting on behalf of WPPA when he refused to execute the Memorandum. There were three parties to the settlement—WPPA, the Town and Thomsen. Thomsen's agreement to the settlement was conditioned upon having it reviewed and approved by his attorney. The Memorandum was not a valid grievance settlement. Thomsen had not violated WIS. STAT. § 111.70(3)(b)3, (3)(b)4 or (3)(c).

¶ 8. The examiner's significant factual findings included the following. During the mediation session, Thomsen advised Urso that he (Thomsen) would not sign any settlement until the settlement had been reviewed and approved by his attorney and, at the time of this conversation, Urso knew that Thomsen had a pending WIS. STAT. § 40.65 claim as well as an EEOC claim against the Town. At that time Thomsen had also filed a worker's compensation claim against the Town and was consulting with an attorney regarding other potential claims against the Town. Urso advised Strang that the settlement would have to be approved by WPPA's counsel, but Strang was not advised that Thomsen would not sign any settlement until it had been reviewed and approved by his attorney. At the conclusion of the mediation session Strang summarized the terms of the settlement and neither Urso nor Thomsen objected. After the mediation session Urso notified Strang that WPPA's counsel approved the settlement and Strang drafted the Memorandum. Urso

come of any controversy as to employment relations, any act prohibited by par. (a) or (b).

recommended to Thomsen that he sign the Memorandum, but Thomsen said it did not accurately reflect the settlement that had been reached after the mediation session because he did not agree to waive any and all claims against the Town as provided in paragraph five. Thomsen showed the Memorandum to his attorneys, who advised him not to sign it.

¶ 9. On review of the examiner's decisions, WERC affirmed the findings of fact and made the additional finding that the Memorandum accurately reflects the settlement agreement reached by Strang, Urso and Thomsen. WERC affirmed, as modified, this conclusion of law: Thomsen was not acting as a WPPA representative during the grievance settlement negotiations on January 17, 1995. WERC also affirmed the conclusions of the examiner that there were three parties to the settlement and that Thomsen did not violate WIS. STAT. § 111.70(3)(b)3. However, WERC reversed the conclusion that Thomsen did not violate subd. (3)(b)4 by failing to sign the Memorandum. WERC ordered that the complaint be dismissed as to subd. (3)(b)3 and para. (3)(c), and ordered Thomsen to sign the Memorandum.

¶ 10. In its decision WERC explained that because it found that the Memorandum accurately reflected the agreement reached by all three parties, and because Thomsen did not tell the Town's attorney that his agreement to a settlement was contingent on his attorney's approval, Thomsen could not rely on that contingency as a valid basis for refusing to sign the Memorandum. WERC then relied on prior rulings that grievance settlements were collective bargaining agreements, and a ruling that grievants violate WIS. STAT. § 111.70(3)(b)4 if they do not comply with their obligations under grievance settlements. Finally,

WERC stated that there was no "jurisdictional impediment" to enforcing a waiver of claims that do not arise out of the collective bargaining agreement when the waiver is agreed to in a grievance settlement.

¶ 11. Thomsen appealed WERC's decisions to the circuit court, and the court rejected all of Thomsen's claimed errors, except one. The circuit court concluded that WERC did not have the authority to enforce a grievance settlement agreement that waived a 42 U.S. C. § 1983 claim without an explicit waiver so stating. The court therefore affirmed WERC's decision and order, "with the exception that the Memorandum of Understanding does *not* include a waiver of Thomsen's statutorily protected right to pursue a § 1983 claim."

## DISCUSSION

*Waiver of Thomsen's Federal Statutory Claims*

¶ 12. The Town and WERC contend that WERC correctly determined it had the authority to order Thomsen to sign the Memorandum, including the general release and waiver of all claims in paragraph five. Thomsen responds that the settlement of federal statutory claims[5] between an employee and an employer is not a collective bargaining agreement within the mean-

---

[5] Thomsen also refers to constitutional claims in addition to federal statutory claims because 42 U.S.C. § 1983 provides a remedy for a violation by a person acting under color of state law of rights secured by the United States Constitution. We use the term "federal statutory claim" in this opinion to refer to claims under § 1983, which allege constitutional violations, as well as claims under federal statutes that are specifically directed to the rights of employees, such as Title VII, Fair Labor Standards Act, Americans with Disability Act and Age Discrimination in Employment Act.

ing of WIS. STAT. § 111.70(3)(b)4, and WERC therefore lacked the authority to order Thomsen to waive these claims by signing the Memorandum.[6]

¶ 13. Resolution of this issue involves an interpretation and application of MERA as well as the federal case law on the waiver of federal statutory rights in the context of collective bargaining. These are questions of law. We review the decision of WERC, not that of the circuit court, and our scope of review is the same as the circuit court. *See Bunker v. LIRC*, 197 Wis. 2d 606, 611, 541 N.W.2d 168 (Ct. App. 1995). Although we are not bound by an agency's conclusions of law, we may accord them deference. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Generally, we give great weight deference when: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *See id.* We give a lesser amount of deference—due weight—when the agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than

---

[6] Although at times it appears that Thomsen is also arguing the settlement of state statutory claims that arise outside of the CBA is not a "collective bargaining agreement" within the meaning of WIS. STAT. § 111.70(3)(b)4, he provides no legal authority for this position, apart from the cases that address only federal statutory claims. He does not develop an argument that links those cases to state statutory claims generally, and he does not analyze, or even identify, any particular state statute. Therefore, we confine our analysis to federal statutory claims.

the court to make judgments regarding the interpretation of the statute. *See id.* at 286.

¶ 14. We give no deference to the agency, and review the issue de novo, when it is one of first impression. *See id.* at 285. In addition, courts have tended to review de novo an agency's conclusions of law regarding the scope of their own authority, *see Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n,* 81 Wis. 2d 344, 351, 260 N.W.2d 712 (1978); *GTE North Inc. v. Public Serv. Comm'n,* 176 Wis. 2d 559, 564, 500 N.W.2d 284 (1993); and those that involve the application of federal law. *See American Family Mut. Ins. Co. v. DOR,* 214 Wis. 2d 577, 583, 571 N.W.2d 710 (Ct. App. 1997), *rev'd on other grounds,* 222 Wis. 2d 650, 586 N.W.2d 872 (1998).

¶ 15. We do not agree with WERC and the Town that we should apply great weight deference to WERC's conclusion on its authority to order the execution of a waiver of federal statutory claims in the context of grievance settlements. Neither WERC nor the Town has provided us with any prior decisions or ruling by WERC on this point. It therefore appears to be one of first impression. In addition, although we recognize that WERC has expertise in applying WIS. STAT. § 111.70(3)(b)4 to a variety of fact situations, including grievance settlements, the disputed provision at issue here implicates federal statutory rights, federal law concerning the waiver of those rights, and, ultimately, the authority of WERC to enforce such waivers. We therefore conclude de novo review is appropriate.

¶ 16. We first examine the relevant sections of MERA. WERC is authorized by statute to determine

the rights of the parties in complaints charging prohibited practices and to enter appropriate remedial orders under the procedures established in WIS. STAT. § 111.07. *See* WIS. STAT. § 111.70(4)(a). An employee, individually or in concert with others, commits a prohibited practice if he or she:

> violate[s] any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them.

Section 111.70(3)(b)4. "Collective bargaining agreement" is not defined in MERA but "collective bargaining" is defined as:

> the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representative of its municipal employes in a collective bargaining unit, to meet and confer at reasonable times, in good faith, with the intention of reaching an agreement, or to resolve questions arising under such an agreement, with respect to wages, hours and conditions of employment. . . .

Section 111.70(1)(a).

¶ 17. Although neither WIS. STAT. § 111.70(1)(a) nor (3)(b)4 refers to grievance settlements short of arbitration, WERC has held in a number of decisions that grievance settlements are collective bargaining agreements. *See, e.g., Oneida County Employees Union*, Decision No. 15374-B (WERC Dec. 12, 1977), *aff'd*,

Decision No. 15374-C (WERC June 29, 1978); *Prairie du Chien Police*, Decision No. 21619-A (WERC July 13, 1984); *South Shore Educ. Assoc.*, Decision No. 16935-A (WERC Dec. 21, 1979), *aff'd*, Decision No. 6935-B (WERC Jan. 15, 1980). However, in none of these decisions did the grievance settlements contain a waiver of federal statutory claims, and the decisions therefore do not provide support for WERC's position in this case. Nor does Wisconsin case law aid our inquiry. The line of cases interpreting "wages, hours and conditions of employment" is primarily concerned with the distinction between mandatory subjects of bargaining and permissive subjects of bargaining. *See, e.g., City of Beloit v. WERC*, 73 Wis. 2d 43, 50, 242 N.W.2d 231 (1976). The parties have provided us with no cases outside Wisconsin that directly address the issue, and we have been able to discover none. However, several recent United States Supreme Court decisions, and cases applying them in other jurisdictions, are relevant.

¶ 18. The United States Supreme Court in *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), addressed the relationship between CBAs and federal statutory claims that belong to the employee as an individual. The issue in that case was whether a general arbitration clause in a CBA required an employee to use the arbitration process for an alleged violation of the Americans with Disability Act (ADA) rather than filing suit in federal court. The Court first acknowledged that there was "some tension" between two lines of authority. *Id.* at 76. The first holds that an employee does not forfeit the right to a judicial forum for certain federal claims if he or she first pursues a grievance to final arbitration under a CBA. *See id.* at 75–76 (citing *Alexander v. Gardner–Denver Co.*, 415

U.S. 36 (1974) (Title VII); *McDonald v. City of West Branch*, 466 U.S. 284 (1984) (42 U.S.C. § 1983); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) (Fair Labor Standards Act)). The second is represented by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), which holds that a claim under the Age Discrimination in Employment Act (ADEA) may be subject to compulsory arbitration pursuant to an arbitration provision in a securities registration form that the individual has signed. *See Wright*, 525 U.S. at 76. The Court in *Wright* noted that the employee's ADA claim was distinct from any right conferred by the CBA and, therefore, the presumption of arbitrability with respect to grievances under CBAs did not apply: a resolution of the ADA claim involved the meaning of a federal statute rather than the application or interpretation of an existing CBA. *Id.* at 78–79. The Court in *Wright* expressly did *not* decide whether a CBA could validly waive an employee's right to a judicial forum for federal claims of employment discrimination. *Id.* at 82. Rather it concluded that any such waiver would, at a minimum, have to be "clear and unmistakable," and the general arbitration clause in the CBA before the Court did not meet that requirement. *Id.* The "clear and unmistakable" requirement arises from the recognition of the importance of the right to a judicial forum for these federal statutory rights. *Id.* at 80.

¶ 19. Before *Wright*, the majority view among the federal circuits was that a union could not prospectively waive, in a CBA, a judicial forum for the federal statutory rights of individual employees, with only the Fourth Circuit holding to the contrary. *Compare Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526 (11th Cir. 1997) (additional illustrative cases

discussed therein), *with Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 885 (4th Cir. 1996). The rationale for the majority position is the potential conflict between collective representation, which is based on a concept of majority rights, and rights under federal statutes, which are designed to protect the rights of individuals and members of minority groups. *See Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362–63 (7th Cir. 1997). We have located no post-*Wright* decision upholding a waiver of a judicial forum for the federal statutory rights of individual employees in a CBA.[7]

¶ 20. We recognize, as the Town and WERC point out, that *Wright* and the other cases we have just dis-

---

[7] Since *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), was decided, the Fourth Circuit has applied the criteria for waiver in *Wright* and has not found those criteria met; but it has indicated that it would, consistent with *Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 885 (4th Cir. 1996), find a valid waiver if those criteria are met. *See Carson v. Giant Food, Inc.*, 175 F.3d 325, 330–32 (4th Cir. 1999). Other jurisdictions have either held that a union may not, in a CBA, waive the right of its members to a judicial forum for federal statutory claims, consistent with the majority rule developed before *Wright, see Thomas v. General Elec. Co.*, 723 N.E.2d 1139, 1142 (Ohio Ct. App. 1999); or they have found there to be no clear and unmistakable waiver in a CBA and therefore, like the *Wright* Court, found it unnecessary to decide whether there could be a valid waiver at all. *See Bratten v. SSI Serv. Inc.* 185 F.3d 625, 631–32 (6th Cir. 1999); *Collins v. Michelin N. America, Inc.*, 71 F. Supp. 2d 909, 911 (N.D. Ind. 1999); *Ozolins v. Northwood-Kensett Community Sch. Dist.*, 40 F. Supp. 2d 1055, 1067 (N.D. Ia. 1999); *Beason v. United Techs. Corp.*, 37 F. Supp. 2d, 127, 130 (D. Conn. 1999); *Schumacher v. Souderton Area Sch. Dist.*, 163 L.R.R.M. (BNA) 2461, 2000 W.L. 72047 (E.D. Pa. 2000).

cussed address prospective waiver for all employees in the bargaining unit, and at issue in this case is a waiver in the context of the settlement of a grievance concerning a particular employee. However, we do not agree that these cases are irrelevant for that reason. If a CBA does not clearly and unmistakably subject the claims of individual employees under a particular federal statute to the grievance/arbitration procedure, such claims are not part of the grievance/arbitration procedure and are not within the authority of the union to settle on behalf of the employee, even under the minority view.

¶ 21. WERC and the Town do not appear to contend that this CBA subjects any federal statutory claims Thomsen might have arising out of the discharge to the grievance/arbitration procedure, or that the union had the authority to waive or settle any such claim on behalf of Thomsen.[8] In light of *Wright*, such a position is not viable, given the terms of this CBA.[9]

---

[8] Urso testified that he was representing Thomsen at the mediation session only with respect to the CBA.

[9] The CBA defines a grievance as:

a controversy between the Association and the Town, or between any employee or employees and the Employer as to:

 (a) A matter involving the interpretation of this Agreement;

 (b) Any matter involving an alleged violation of this Agreement in which an employee or group of employees, or the Employer, maintains that any of their rights or privileges have been impaired in violation of this Agreement.

The CBA also provides a three-step grievance procedure, following which, if the grievance is not settled, "either party may take the matter to arbitration." Nothing elsewhere in the agreement even arguably covers federal statutory or constitutional rights.

Because there is no "clear and unmistakable" waiver in this CBA, we need not decide the question left open by *Wright*: whether such a waiver would be valid.

512

Their position is rather that Thomsen as an individual employee could waive those claims and did so.

¶ 22. We agree that an employee who is a member of a collective bargaining unit may waive any potential federal statutory claims he or she may have arising out of the circumstances that are the subject of the grievance, and that waiver is binding on the employee if it is knowing and voluntary.[10] *See Alexander*, 415 U.S. at 52 n.15; *Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681 (8th Cir. 1998), *cert. denied* 526 U.S. 1004 (1999).[11] However, in the cases the Town and WERC bring to our attention, the waiver is treated as an agreement between the employee and the employer, and it is the court that determines whether such a waiver was knowing and voluntary when the employee seeks to bring an action under the federal statute against the employer. These cases do not establish that such an agreement is a CBA, is an agreement reached under a CBA, is subject to the jurisdiction of a

---

[10] We observe, however, that the requirements for a valid waiver are not necessarily the same for all federal statutes. *See, e.g., Lloyd v. Buenswich Corp.*, 180 F.3d 893 (7th Cir. 1999) (discussing waiver requirements for ADEA claim).

[11] The Town cites two additional cases—*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Adcock,* 176 F.R.D. 539, 544 (N.D. Ill. 1997), and *Fair v. International Flavors and Fragrances, Inc.*, 905 F.2d 1114, 1115–16 (7th Cir. 1990). In neither is the employee a member of a collective bargaining unit. These cases therefore simply stand for the well-established proposition that an individual employee who has a dispute with an employer and knowingly and voluntarily waives federal statutory claims in settling the dispute with the employer may not thereafter pursue those claims.

state agency such as WERC, or that the union is a party to such an agreement.[12]

¶ 23. Consistent with federal precedent, we conclude that any agreement Thomsen made to waive any federal statutory claim was an agreement between him and the Town, and WPPA was not a party to that agreement. Such an agreement is therefore not a collective bargaining agreement within the meaning of WIS. STAT. § 111.70(3)(b)4 and (1)(a). It follows that Thomsen's failure to sign such an agreement when reduced to writing, even if he orally agreed to it, is not a violation of a collective bargaining agreement under § 111.70(3)(b)4.

¶ 24. Both the Town and WERC emphasize that WERC's decision furthers one of the important pur-

---

[12] Indeed, in *Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681 (8th Cir. 1998), *cert. denied* 526 U.S. 1004 (1999)—the only case brought to our attention in which the employee was a member of a collective bargaining unit and agreed to a waiver of all claims, including federal statutory claims, in the context of a grievance settlement—the court's analysis recognizes the distinction between rights arising under the CBA and those arising under federal statutory and constitutional law, even though both were resolved in one document signed by the union, the employer, the employee and the employee's personal attorney. *Id.* at 685, 689. The court described "the grievance proceedings [under the CBA as] result[ing] in a settlement between [the union] and [the employer] that reinstated the [employee]. . . ." *Id.* at 684–85. It acknowledged that the CBA did not authorize an arbitrator to resolve the employee's statutory and constitutional claims; decided, however, that this did not prevent the employee from waiving those claims as long as he did so voluntarily and knowingly; and concluded that he did do so, in particular because both he and his personal attorney signed the settlement agreement. *See id.* at 689–90.

poses of MERA and a significant policy of the State of Wisconsin: to encourage voluntary settlement of "labor disputes arising in municipal employment . . . through the procedures of collective bargaining." WIS. STAT. § 111.70(6). However this argument assumes the very proposition that is disputed on this appeal: that Thomsen's federal statutory claims are subject to collective bargaining and his dispute with the Town concerning those claims is a labor dispute that WERC has the authority to assist in settling. As we have discussed above, this assumption is not supported by the language of MERA and, even if it were, it is inconsistent with the federal case law that governs those federal statutory rights.

¶ 25. The Town also contends that if "parties to a labor dispute cannot fully and finally resolve all issues, voluntary settlements will become a rarity," because employers will be reluctant to reach a voluntary settlement of a grievance if they might still have to defend a court action on a federal statutory claim. However, WERC's lack of authority to order Thomsen to sign a waiver of his federal statutory claims does not create or increase the possibility that an employer may have to defend both a court action brought by an employee under a federal statute and a grievance under the grievance/arbitration procedures of a CBA. *Alexander v. Gardner-Denver Company*, 415 U.S. at 54–55, and *McDonald v. City of West Branch*, 466 U.S. at 288, established that under federal law an employee has the right to pursue fully both the remedies available under the grievance/arbitration clause of a CBA and a de novo federal statutory claim in a judicial forum.[13] And

[13] Under the typical CBA, the union, not the employee, has the authority to decide whether to pursue a grievance, and, if so, how far, subject of course to its duty to the employee of fair

*Wright* does not indicate a retreat from this holding—at least with terms of a CBA such as the one between WPPA and the Town. To the extent that these rulings discourage the settlement of grievances under a CBA when an employee is not willing to agree with an employer to waive all federal statutory claims, that is a result that neither WERC nor this court is free to change.[14]

¶ 26. Our decision does not prevent an employer from conditioning the settlement of a grievance with a union on a waiver by the individual employee of all potential federal statutory causes of action, nor does it disturb WERC's rulings regarding grievance settlements that do not address an employee's federal statutory rights. Our holding is simply that if an employee agrees to waive any federal statutory right, that is an agreement between the employee and the employer and is not a collective bargaining agreement within the meaning of WIS. STAT. § 111.70(1)(a) and

representation. *See Gray v. Marinette County*, 200 Wis. 2d 426, 436, 546 N.W.2d 553 (Ct. App. 1996). Therefore, it is not necessarily the case that if a grievance does not settle at a particular stage, the union will continue to pursue it.

[14] We observe, however, that the Court in *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 54–55, specifically rejected the argument that permitting an employee to file a de novo Title VII action in court after an arbitrator under a CBA had ruled the employee was fired for just cause would undermine the employer's incentive to arbitrate grievances under a CBA. Permitting the employee to fully pursue both the CBA remedies for those claimed violations of rights arising under the CBA and judicial remedies for claimed violations of rights arising under federal statute was, the Court decided, the proper accommodation of "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices." *Id.* at 59–60.

(3)(b)4. If the employee agrees and later violates that agreement by filing a court action against the employer, the employer may assert that agreement as a defense in the court action. So, for example, the Town is free to make the same assertion as a defense to any court action Thomsen files against it that it has made to WERC: the Town may argue in the court action that Thomsen orally agreed to waive all claims of any type he might have against the Town related to his discharge and the court should hold him to it. The court, rather than WERC, will then apply federal law to decide whether Thomsen did voluntarily and knowingly waive the particular federal claims that he asserts in the court action. Indeed, as the Town acknowledges, even if we were to affirm WERC's order that Thomsen must sign the Memorandum, the court presiding over any action filed by Thomsen would still have to decide whether the Memorandum constituted a knowing and voluntary waiver of the particular federal claim asserted in court.

*Contingency of Thomsen's Attorney's Approval*

■

¶ 27. Thomsen contends WERC erred in concluding he was not entitled to rely on his attorney's advice not to sign the Memorandum. According to Thomsen the prior WERC decisions that WERC relied on[15] do

---

[15] WERC relied by analogy on its prior decisions holding that a party violates the duty to bargain in good faith when it refuses to support a tentative agreement reached because of advice of counsel, when that party had not informed the other party that the tentative agreement is subject to advice of counsel. *See Wisconsin Prof'l Police Assoc.*, Decision No. 27853-B (WERC June 15, 1995), and decisions cited therein. WERC explained that although those decisions were made in the con-

not apply to claims external to the CBA, on which Urso
testified he did not have the authority to represent
Thomsen and the settlement of which the Town should
expect that Thomsen would have his own attorney
review. Because we have decided it is not a violation of
WIS. STAT. § 111.70(3)(b)4 for Thomsen to refuse to sign
a written agreement waiving his federal statutory
claims, it is axiomatic that it is not a prohibited prac-
tice for him to do so because of his attorney's advice,
even if he did not tell the Town his agreement was
contingent on his attorney's approval. However, we do
not extend this reasoning to other claims external to
the CBA that are not federal statutory claims for the
reasons we have explained in footnote 6.

*WERC's Additional Factual Finding*

¶ 28. Thomsen contends that WERC violated his
right to due process by failing to consult with the hear-
ing examiner on issues of witness credibility before
making the additional finding of fact that the Memo-
randum accurately reflects the settlement agreement
reached by Strang, Urso and Thomsen on January 17.
Thomsen points out that in making this finding, WERC
resolved a dispute in testimony that had not been
resolved by the examiner, expressly determining that
the testimony of Urso and Strang that the Memoran-
dum did accurately reflect the terms of the settlement
reached was "more credible and consistent than that of
Thomsen and Ratliffe [another employee who testi-

text of contract negotiations between a union and an employer,
the same reasoning applied to a grievance settlement; since
Thomsen did not tell the Town that his agreement was contin-
gent upon attorney approval, he was not entitled to rely on
attorney disapproval in refusing to sign the Memorandum.

fied]."[16] The position of WERC and the Town is that due process does not require that WERC consult with the examiner on issues of witness credibility unless it is reversing a factual finding made by the examiner. We review this issue de novo because it presents a question of constitutional law and does not involve any factual disputes. *See Hakes v. LIRC*, 187 Wis. 2d 582, 586, 523 N.W.2d 155 (Ct. App. 1994).

¶ 29. Where credibility of witnesses is at issue, it is a denial of due process if the administrative agency making a fact determination does not have the benefit of the findings, conclusions and impressions of each hearing officer who conducted any part of the hearing. *See Shawley v. Industrial Comm'n*, 16 Wis. 2d 535, 541–42, 114 N.W.2d 872 (1962). *See also Falke ·v. Industrial Comm'n*, 17 Wis. 2d 289, 295, 116 N.W.2d 125 (1962) (there is constitutional right to benefit of demeanor evidence, where credibility is substantial element in case, which is lost if agency decides controversy without benefit of participation of hearing examiner who heard such testimony). In enunciating

---

[16] Thomsen testified that he did not agree to waive all claims at the mediation session but "only the ADA claim and the grievance issue." Insofar as the factual dispute is whether Thomsen agreed to waive all his federal statutory claims at the mediation session, it is unnecessary to resolve that dispute, since we have concluded that it is not a violation of WIS. STAT. § 111.70(3)(b)4 for Thomsen to refuse to sign a written waiver of his federal statutory rights, even if he orally agreed to do so. However, insofar as the factual dispute is whether Thomsen agreed at the mediation session to waive his state statutory rights, we cannot say with certainty that dispute will be irrelevant if there are proceedings on remand, and we therefore address Thomsen's due process claim.

this principle, *Shawley* relied on *Wright v. Industrial Comm'n*, 10 Wis. 2d 653, 659, 103 N.W.2d 531 (1960) (which appears to be the first Wisconsin case addressing this issue), and on cases from other jurisdictions. *See Shawley*, 16 Wis. 2d at 542. The rationale of the principle was more fully explained in a Utah case which the court in *Wright* and *Shawley* both relied upon:

> Where there is a conflict in the testimony, and the weight and credibility to be given testimony of the various witnesses is the determining factor, in order to accord a 'full hearing' to which all litigants are entitled, the person who conducts the hearing, hears the testimony, and sees the witnesses while testifying, whether a member of the board, or an examiner or referee, must either participate in the decision, or where, at the time the decision is rendered, he has severed his connections with the board, commission or fact-finding body, the record must show affirmatively *that the one who finds the facts had access to the benefit of his findings, conclusions, and impressions of such testimony, by either written or oral reports thereof.* This does not necessarily require that all of the commissioners must be present at the hearing, or even that the one hearing the evidence must concur in the result, *but his opinion on the testimony must be available to the commission in making its decision.*

*Wright*, 10 Wis. 2d at 659–60 (citing *Crow v. Industrial Comm'n.*, 140 P.2d 321, 322 (Utah 1943)). *Shawley* and *Crow* did not concern a reversal of a factual finding made by an examiner who heard the testimony, but rather concerned findings made in the first instance by examiners who had not heard the testimony.

¶ 30. *Braun v. Industrial Comm'n*, 36 Wis. 2d 48, 57, 153 N.W.2d 81 (1967), subsequently decided the

"demands of due process" required that the record must "affirmatively show that the commission had the benefit of the examiner's personal impressions of the material witnesses . . .[, in] the form or either adequate notes of the examiner of personal consultation with him." Although *Braun* was decided in the context of a reversal of an examiner's findings by officials who were not present at the hearing, *Braun* relied on *Shawley*. Nothing in *Braun* or later cases suggests any retreat from the principle that one appearing before an administrative tribunal is entitled to have determinations of witness credibility made either by the examiner who saw and heard the witnesses testify, or by another official who had the benefit of the examiner's impressions on witness demeanor and credibility, at least where the agency is reversing the examiner.[17] Further, we can see no rationale, and neither WERC nor the Town presented one, for concluding that this principle of due process is implicated when an official reverses an examiner's finding that involves witness credibility, but not when the official makes a new finding that involves witness credibility and reverses the examiner's conclusion on that basis.

¶ 31. In its additional finding WERC did make a witness credibility determination not made by the examiner, and one that cannot be inferred from the findings the examiner did make. The additional finding was the basis for WERC's reversal. There is no indication in WERC's decision that it conferred with the examiner in doing so or consulted the examiner's notes

---

[17] In *Conradt v. Mt. Carmel Sch.*, 197 Wis. 2d 60, 71–73, 539 N.W.2d 713 (Ct. App. 1995), we held a credibility conference was not necessary when the agency was affirming the examiner.

on witness credibility and demeanor. Therefore, we reverse this finding. If a finding on this point is necessary for any proceedings on remand, such a finding must be made consistent with this opinion.

*Disposition*

¶ 32. We now consider the proper disposition of the Town's complaint based on WIS. STAT. § 111.70(3)(b)4. In light of our conclusion that WERC does not have the authority to order Thomsen to sign a waiver of his federal statutory claims, we do not agree with the circuit court that the correct disposition is to affirm WERC's order that Thomsen sign the Memorandum of Understanding "with the exception that the Memorandum of Understanding does *not* include a waiver of Thomsen's statutorily protected right to pursue a § 1983 claim." Thomsen's signature on the Memorandum as modified by the court is not the relief the Town sought in its complaint, and the Town may not want Thomsen's signature on anything other than the Memorandum as drafted.

¶ 33. We also do not agree with Thomsen that he is necessarily entitled to a complete reversal of WERC's decision and a dismissal of the complaint under WIS. STAT. § 111.70(3)(b)4. We have held only that he did not violate a collective bargaining agreement by refusing to sign a waiver that includes a waiver of his federal statutory rights, and therefore WERC may not order him to do so. We are not deciding whether the Town is entitled to any other relief based on its complaint under § 111.70(3)(b)4 that is consistent with this opinion, because the parties have not asked us to address that.

¶ 34. We conclude the appropriate disposition is a remand to WERC. We therefore reverse the order of

the circuit court and direct the court to enter an order reversing WERC's conclusion that Thomsen violated WIS. STAT. § 111.70(3)(b)4,[18] reversing WERC's order that Thomsen sign the Memorandum, and remanding for further proceeding before WERC consistent with this opinion.[19]

*By the Court.*—Order reversed and cause remanded with directions.

---

[18] We do not disturb the examiner's conclusion of law, adopted by WERC, that there are three parties to the settlement of January 17, 1995—the WPPA, the Town and Thomsen. The examiner decided this point to resolve the dispute whether Thomsen was representing the union at the mediation session or was present as the grievant. Understood in that context, this conclusion of law is consistent with our opinion.

[19] We do not address Thomsen's contention that WERC erred in permitting Strang to testify concerning his notes of the mediation session and his recollection of it because he was representing the Town at the hearing. Although Thomsen objected to Strang's testimony at the hearing before the examiner, he never argued to WERC that this ruling was an error. We understand the reason is probably that, even with Strang's testimony, Thomsen prevailed before the examiner and was defending the examiner's decision before WERC, not challenging it. Nevertheless, we review the decision of WERC, not that of the examiner or that of the circuit court, and we have no ruling by WERC on this point to review. If this point is relevant in any proceedings on remand to WERC, Thomsen may raise it then.